UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GS HOLISTIC, LLC,

    Plaintiff,

 v.               Case No. 23-cv-785-pp

SPHINX, INC., *d/b/a Sphinx Vape & Smoke*
and AHMED KHALAF,

    Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (DKT. NO. 9), GRANTING IN PART PLAINTIFF'S REQUEST FOR STATUTORY DAMAGES AND COSTS, GRANTING PLAINTIFF'S REQUEST FOR PERMANENT INJUNCTION AND DISMISSING CASE**

  On June 15, 2023, the plaintiff filed a complaint against the defendants alleging trademark infringement, counterfeiting and false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. §1051 et seq. Dkt. No. 1. The plaintiff served defendants Sphinx Inc. d/b/a Sphinx Vape & Smoke and Ahmed Khalaf on June 24, 2023, dkt. nos. 4, 5, and, after the defendants failed to appear, asked the Clerk of Court to enter default, dkt. no. 7. The clerk entered default on August 25, 2023. The plaintiff has filed a motion for default judgment seeking an award of $150,000 plus costs of $878.79. Dkt. Nos. 9-1 at 2; 10 at 1.

**I. Entry of Default**

  Federal Rule of Civil Procedure 55 requires a two-step process before the entry of default judgment. A party first must seek an entry of default based on

1

the opposing party's failure to plead. Fed. R. Civ. P. 55(a). This means that the court must assure itself that the defendant was aware of the suit and still did not respond.

Under Federal Rule of Civil Procedure 4(h), plaintiffs may serve a corporate defendant "in the manner prescribed by Rule 4(e)(1)." Fed. R. Civ. P. 4(h)(1)(A). Rule 4(e)(1) allows the plaintiffs to serve an individual using the methods allowed by state law in the state where the federal district is located. Fed. R. Civ. P. 4(e)(1). Wisconsin allows plaintiffs to personally serve an officer, director or managing agent of a domestic or foreign corporation or limited liability company by serving an agent authorized by appointment or law. Wis. Stat. §801.11(5)(a), (c).

In requesting the entry of default, the plaintiff said that it had served Sphinx Inc. "via corporate service" and served defendant Khalaf via personal service on the same day (June 24, 2023). Dkt. No. 7 at ¶¶2, 4. The plaintiff filed the affidavit of process server William F. Frahm II from Cream City Process, who averred that he served the authenticated summons and complaint on Sphinx Inc. by delivering to and leaving the documents with the owner (Khalaf) at 3951 W. Dory Drive in Franklin, Wisconsin on June 24, 2023 at 3:10 p.m. Dkt. No. 4. The plaintiff filed a separate affidavit from Frahm averring that he personally served Khalaf at the same time (3:10 p.m.). Dkt. No. 5. The Wisconsin Department of Financial Institutions identifies Khalaf as the registered agent for Sphinx Inc. located at 3951 W. Dory Drive in Franklin, Wisconsin. https://wdfi.org/apps/corpSearch/Details.aspx?entityID

2

=S058965&hash=1704236568&searchFunctionID=f7586fc4-d39b-4519-af175e42693e8a39&type=Simple&q=sphinx+inc.

Based on the information provided, the court concludes that the plaintiff has properly served both defendants.

## II. Motion for Default Judgment (Dkt. No. 9)

After the entry of default, the plaintiff may move for default judgment under Fed. R. Civ. P. 55(b). When the court determines that a defendant is in default, the court accepts as true the well-pleaded allegations in the complaint. e360 Insight v. The Spamhaus Project, 500 F.3d 594, 602 (7th Cir. 2007). "A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action in the complaint." Id. However, "even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true." Id. (quoting In re Catt, 38 F.3d 789, 793 (7th Cir. 2004)). A district court "must conduct an inquiry in order to ascertain the amount of damages with reasonable certainty. Id. Rule 55(b)(2) allows the district court to conduct this inquiry through hearings or referrals, if necessary, to determine the amount of damages. Fed. R. Civ. P. 55(b). Hearings or referrals are unnecessary, however, if the "amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." e360 Insight, 500 F.3d at 602 (quoting Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983)).

3

A.     Liability

In its brief, the plaintiff argues that it has established liability on willful trademark infringement under 15 U.S.C. §1114, trademark counterfeiting under 15 U.S.C. §1116(d) and false designation of origin and unfair competition under 15 U.S.C. §1125(a). Dkt. No. 10 at 2. To succeed on a trademark infringement claim, the plaintiff must show that it owns a valid, protectable trademark and that there is a likelihood of confusion caused by the alleged infringer's use of the disputed mark. Grubhub Inc. v. Relish Labs LLC, 80 F.4th 835, 844 (7th Cir. 2023); see 15 U.S.C. §1114. The elements are similar for a claim under 15 U.S.C. §1125(a). Uncommon, LLC v. Spigen, Inc., 926 F.3d 409, 419 (7th Cir. 2019). With respect to the likelihood of confusion, the Seventh Circuit has considered the following seven factors: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any evidence of actual confusion; and (7) the intent of the defendant to "palm off" his product as that of another. Sorensen v. WD-40 Co., 792 F.3d 712, 726 (7th Cir. 2015).

The plaintiff has satisfied the first requirement by establishing that it owns a protectable mark. The Stündenglass marks are registered with the U.S. Patent and Trademark Office and owned by the plaintiff. Dkt. No. 1 at ¶¶9-11. The plaintiff has established that it has continuously and extensively used the trademark "STÜNDENGLASS" since 2020, working to distinguish its product

4

and build significant goodwill in the brand across the United States. Id. at ¶¶8, 12, 16. As a result of the plaintiff's use, the plaintiff was granted valid statutory and common law rights to the marks. Id. at ¶9. Specifically, the plaintiff owns U.S. Trademark Registration Number 6,633,884 for the standard character mark "Stündenglass" in association with goods further identified in registration in international class 011, Registration Number 6,174,292 for the design plus words mark "S" and its logo in association with goods further identified in the registration in international class 034, and Registration Number 6,174,291 for the standard character mark "Stündenglass" in association with goods identified in registration in international class 034. Id. at ¶10.

The plaintiff also has established likelihood of confusion. The plaintiff has established similarity of the marks and the products by stating that, on February 10, 2023, the plaintiff's investigator entered the defendant's retail location and observed that it had a glass infuser with the Stündenglass trademarks. Dkt. No. 1 at ¶29. The investigator purchased from the defendants a glass infuser with a Stündenglass mark for $316.79. Id. The infuser with the Stündenglass mark actually was a counterfeit product with the infringing mark. Id. Defendant Khalaf "authorized, directed and/or participated" in the sale of the counterfeit good. Id. at ¶30.

The plaintiff has established the strength of the mark, the intent to palm off the product and the confusion created by concurrent use. According to the plaintiff, the Stündenglass marks are distinctive to both the consuming public and the plaintiff's trade, and its products are made from superior materials.

5

Dkt. No. 1 at ¶13. Consumers and industry professionals recognize the superiority of Stündenglass-branded products. Id. The Stündenglass trademarks—exclusive to the plaintiff—clearly appear on the plaintiff's Stündenglass products, as well as on the packaging and advertisements related to the products. Id. at ¶14. Products bearing the plaintiff's Stündenglass marks are widely recognized as being high-quality products sourced from the plaintiff. Id. The plaintiff has spent substantial time, money and effort in developing consumer recognition and awareness of the Stündenglass brand via point-of-purchase materials, displays, their website, industry trade shows and social media. Id. at ¶16.

The plaintiff sells its products under the Stündenglass Marks to approximately 3,000 *authorized* stores in the United States, including in Wisconsin. Dkt. No. 1 at ¶19. Consumers are willing to pay higher prices for genuine Stündenglass products because of the quality and innovation associated with the marks. Id. at ¶20. A Stündenglass brand glass infuser is priced at $599.95, while a non-Stündenglass branded product is being sold in a range of $199 to $600. Id.

The court is satisfied that the plaintiff has established Lanham Act violations under 15 U.S.C. §§1114 and 1125(a).

B.    Damages

The Lanham Act provides that a plaintiff may obtain actual damages or statutory damages for trademark infringement or counterfeiting. 15 U.S.C. §1117. The plaintiff has elected to pursue statutory damages. Under

6

§1117(c)(1), a plaintiff in a case involving the use of a counterfeit mark may recover an award of statutory damages in an amount between $1,000 and $200,000 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court orders just." Id. §1117(c)(1). "If the court finds that the use of the counterfeit mark was willful," the ceiling for statutory damages is raised to $2,000,000 per mark per type of goods or services. Id. §1117(c)(2). The statute provides no guidance for determining the award amount.

The plaintiff seeks statutory damages in the amount of $150,000 because the case involves a counterfeit mark and the conduct was willful. Dkt. No. 10 at 7-13. In support of the motion, the plaintiff filed an "affidavit as to damages" from the plaintiff's CEO, Christopher Folkerts. Dkt. No. 9-2. Folkerts avers that counterfeit products bearing the plaintiff's marks were sold in the defendant's store, that the defendant store owner—who sells vaporizers and accessories—knew the price of Stündenglass products and knew the defendants products were of a far inferior quality. Id. at ¶8. He asks the court to award $50,000 in statutory damages for each of the three infringed trademarks. Id. at ¶16. Folkerts acknowledges that actual damages "are nearly impossible to determine, especially in cases of default where the Defendants have not appeared or participated in meaningful discovery." Id. at ¶20. He points to the general concepts of "lost consumer good-will, loss of brand reputation, confusion in the marketplace, and lost profits based on the systematic sale of fake Stündenglass products." Id. at ¶21.

7

In a separate affidavit regarding the value of damages, Folkerts avers that the plaintiff's sales of Stündenglass products in the United States were approximately $1,700,000 in 2020 and approximately $9,600,000 in 2021. Dkt. No. 9-3 at ¶15. Through research, the plaintiff has determined that "at least 3 out of every 10 products sold is a counterfeit" and that, "if the market had not been impacted by the flood of inferior, mass-produced fake Stündenglass products" the plaintiff's 2021 sales would have been approximately $38,400,000. Id. at ¶16.

In seeking a higher statutory amount, the plaintiff argues that the defendants used images and names identical to the plaintiff's marks. Dkt. No. 10 at 9 (citing 15 U.S.C. §1116(d)(1)(B)(ii)). The plaintiff argues that when determining damages in Lanham Act cases, many courts "treat default as evidence of willfulness." Id. (citing Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 157 (E.D.N.Y. 2010) (collecting cases)). The plaintiff suggests that the court look to an analogous provision of the Copyright Act, 17 U.S.C. §504(c), for guidance on willfulness but simultaneously acknowledges that in the copyright context, some courts have hesitated to "'find willful infringement' based solely on a default judgment." Id. at 10 (citing Malibu Media LLC v. Funderburg, Case No. 13-cv-2614, 2015 WL 1887754, at *4 (N.D. Ill. Apr. 24, 2015)). The plaintiff argues that it has more evidence of willfulness than the plaintiff in Malibu Media (a pornography-download case) because it has direct evidence "that Defendants are trafficking in counterfeit goods with notorious suppliers selling knockoffs from China." Id. at 10-11. The plaintiff

did not, however, cite direct evidence that these defendants are trafficking goods from "notorious" suppliers.

The court is not persuaded that there is a basis to award $150,000 in statutory damages. The plaintiff alleged in the complaint that an investigator entered the defendant store on one occasion, saw a infuser with the plaintiff's mark, purchased it and determined it to be a counterfeit. Dkt. No. 1 at ¶29. The plaintiff's CEO, relying on undisclosed research, estimates that sales in 2021 would have been $38,400,000—in excess of four times the actual sales— without the counterfeit goods. Dkt. No. 9-3 at ¶16. The plaintiff otherwise relies on law review articles, the fact that the defendants failed to appear, decisions by other courts granting the plaintiff's requests and facts that distinguish this case from the copyright "trolls" in the adult film industry. Dkt. No. 10 at 9-11. That record does not support an award of $150,000.

Judge Adelman recently granted default judgment and entered a permanent injunction in three of the plaintiff's forty cases pending in this district. GS Holistic, LLC v. Smoke World, Inc. et al., Case No. 23-cv-703-LA (E.D. Wis. Nov. 9, 2023); GS Holistic v. King Louis Vape and Smoke LLC et al., Case No. 23-cv-747-LA (E.D. Wis. Nov. 9, 2023); GS Holistic, LLC v. KHM LLC d/b/a Luxury Cigars and Hasan M. Ali, Case No. 23-cv-749-LA (E.D. Wis. Nov. 9, 2023). Judge Adelman rejected the plaintiff's request for $150,000 as "excessive" given that the defendants were not running a widespread counterfeiting operation. Smoke World, Case No. 23-cv-703, Dkt. No. 11 at 4. He noted that the investigator had purchased a counterfeit product for about

9

$300, that the genuine article sells for $600 and that the defendants could not have made more than $300 in profits on the sale. Id. In each of the cases, Judge Adelman determined that a $20,000 award would be a significant sum for a company that operates a small retail store, would have a deterrent effect and reasonably approximated the actual harm caused by the infringement (multiple sales of approximately fifty counterfeit products). Smoke World, Case No. 23-cv-703-LA, Dkt. No. 10 at 4; King Louis, Case No. 23-cv-747-LA, Dkt. No. 11 at 4; KHM, Case No. 23-cv-749-LA, Dkt. No. 12 at 4.

This past week, Judge Stadtmueller reduced the plaintiff's request for statutory damages from $50,000 per mark to $25,000 per mark for a total of $75,000 in five more of the plaintiff's forty pending cases. GS Holistic, LLC v. Smoke 414 LLC d/b/a AZ Cell & Tobacco and Mahdi Hassan, Case No. 23-cv-743-JPS, Dkt. No. 10 at 16 (E.D. Wis. Nov. 28, 2023); GS Holistic v. Cigarworld Inc. d/b/a Milwaukee Vapor East and Chirag Patel, Case No. 23-cv-701-JPS, Dkt. No. 11 at 16 (E.D. Wis. Nov. 28, 2023); GS Holistic LLC v. Lava Smoke Shop LLC d/b/a Lava Smoke Shop and Ziyad Abdallah, Case No. 23-cv-748-JPS, Dkt. No. 11 at 16 (E.D. Wis. Nov. 28, 2023); GS Holistic LLC v. S&S 2021 LLLC d/b/a Bam Bam's Smoke Shop and Hookah Lounge and Faries Jaraba, Case No. 23-cv-697-JPS, Dkt. No. 11 at 16 (E.D. Wis. Nov. 28, 2023); GS Holistic, LLC v. MKE Vapor, Inc. d/b/a MKE Vape and Viren B. Patel, Case No. 23-cv-750-JPS, Dkt. No. 12 at 16 (E.D. Wis. Nov. 28, 2023). In each of these cases, Judge Stadtmueller observed that the specific allegations addressing willfulness were "sparse and vague." See Smoke 414, Dkt. No. 10 at 11. He

noted that the plaintiff had not alleged it had put the defendants on notice that it owned the mark such that willfulness could be inferred. Id. (citing Chi-Boy Music v. Charlie Club, Inc., 930 F.2d 1224, 1227 (7th Cir. 1991)). At the same time, Judge Stadtmueller acknowledged that willfulness may be inferred from the default. Id. at 12. With respect to the value of the trademark, Judge Stadtmueller found that the plaintiff had "expended substantial time, money and effort in developing its brand recognition and goodwill." Id. at 13. Still, he found nothing in the record regarding the plaintiff's sales in 2023—when the investigator made the purchase of the counterfeit products—and nothing to indicate how much, if any, of the plaintiff's estimated losses were attributable to the named defendants (as opposed to other parties nationally). Id. at 14-15. Judge Stadtmueller found that the award of $75,000 fell within the range that other courts have awarded. Id. at 16 (citing G.S. Holistic, LLC v. RHA Corp., Case No. 2022cv07898, Dkt. No. 35 at 7 (C.D. Cal. July 28, 2023) ("[C]ourts considering near-identical factual circumstances . . . have generally awarded between $10,000 and $25,000, with a high end of $50,000.") (reducing statutory damages award from $50,000 requested per counterfeited mark to $20,000 per counterfeited mark) (collecting cases)).

A court in the Western District of Washington reduced the plaintiff's requested award to $5,000 in three cases. GS Holistic, LLC v. Wham Bonney, Lake Inc., Case No. C23-5213JLR, 2023 WL 8087464, at *6 (W.D. Wash. Nov. 21, 2023); GS Holistic, LLC v. LFP Shah Corp., Case No. C23-1198JLR, 2023 WL 7920330, at *6 (W.D. Wash. Nov. 16, 2023); GS Holistic, LLC v. SAI Limited

Liability Co., Case No. C23-0324JLR, 2023 WL 7496360, at *6 (W.D. Wash. Nov. 13, 2023). That court relied on the fact that the investigator had purchased a single glass infuser with a "Stündenglass Mark affixed to it." SAI Limited Liability, 2023 WL 7496360, at *6. It noted that the CEO's declaration provided "no explanation of how [the plaintiff's] CEO determined that the company's total U.S. sales would have quadrupled in 2021 if there were no counterfeit products in the market and it says absolutely nothing about the damages specifically caused by the Defendants in this case." Id. at *5. The court concluded that the award of $5,000 would "serve the compensatory, penal and deterrent purposes of statutory damages without resulting in an undue windfall" for the plaintiff. Id. at *6. The $5,000 award equated to "over eleven times the price of the allegedly infringing glass infuser" purchased by the investigator. Id. The same court reduced the requested award to $2,000 in a fourth case, GS Holistic, LLC v. NWIN LLC, Case No. C23-0397JLR, 2023 WL 7496359, at *6 (W.D. Wash. Nov. 13, 2023).

This court will award statutory damages of $20,000. The amount of the award lies in the court's discretion and is within the range provided by the statute. The investigator made a single purchase from a retail store of "*a* glass infuser with *a* Stündenglass Mark affixed to it." Dkt. No. 1 at ¶29 (emphasis added). The court understands that the defendants chose not to appear, they likely knew they were not authorized dealers of the Stündenglass products, the plaintiff has suffered losses because of the sale of counterfeit goods and the infringing product bore a Stündenglass mark. But the investigator paid

12

Case 2:23-cv-00785-PP   Filed 11/30/23   Page 12 of 15   Document 11

$316.79 for an infuser that would otherwise sell for $599.95 (a difference of $283.16). Id. Based on the limited information available to the court, the statutory award of $20,000 will serve the purpose of having a deterrent effect but more closely approximates the amount of the harm.

    C.    <u>Injunctive Relief</u>

The Lanham Act permits injunctive relief on a finding of infringement. 15 U.S.C. §1116(a). To obtain a permanent injunction, the plaintiff must show (1) irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that a remedy in equity is warranted in light of the balance of hardships; and (4) that the public interest would not be harmed by a permanent injunction. <u>LAJIM, LLC v. Gen. Elec. Co.</u>, 917 F.3d 933, 944 (7th Cir. 2019) (citing <u>eBay v. MercExchange, LLC</u>, 547 U.S. 388, 391 (2006)). A plaintiff with a protectable mark seeking an injunction is entitled to a rebuttable presumption of irreparable harm upon a finding of a violation under the Lanham Act. 15 U.S.C. §1116(a).

The court has found irreparable injury based on the sale of a counterfeit good bearing the plaintiff's marks. There is no adequate remedy at law aside from the award of statutory damages because there is no effective way to calculate the plaintiff's damages. See <u>Krispy Krunchy Foods LLC v. Silco LLC</u>, Case No. 20-cv-293, 2023 WL 2465881, at *6 (E.D. Wis. Mar. 10, 2023). Also, there is a rebuttable presumption of irreparable harm under 15 U.S.C. §1116(a) and the defendants have failed to offer any rebuttal (or appear at all). The plaintiff has established that the defendants are selling inferior products at

the expense of the plaintiff's profits, goodwill and reputation. The public interest is served by enforcing the plaintiff's marks and minimizing public confusion.

By separate order, the court will issue a permanent injunction prohibiting the defendants from selling or offering to sell counterfeit Stündenglass products.

### D. Costs

The Lanham Act allows a plaintiff to recover the costs of the case. 15 U.S.C. §1117(a). The plaintiff seeks costs in the amount of $878.79, which includes the $402 filing fee, the $95 process server fee and $381.79 in investigation fees. Dkt. No. 9-1 at ¶6. The court will award costs in the amount of $497 (the filing fee and process server fee). The court will not award the investigation fees. The court shares the concerns expressed by Judge Adelman that the plaintiff has not cited—and the court has not located—authority to award the costs of the investigation. See Smoke World, Case No. 23-703, Dkt. No. 10 at 5, 6; see also Wahl v. Carrier Mfg. Co., Inc., 511 F.2d 209, 217 (7th Cir. 1975) (expenses incurred in making investigations "are not recoverable as costs").

## III. CONCLUSION

The court **GRANTS** the plaintiff's motion for default judgment. Dkt. No. 9.

14

The court **ORDERS** that the Clerk of Court must enter default judgment in favor of the plaintiff and against the defendants, jointly and severally, in the amount of $20,000 plus costs in the amount of $497.

The court **GRANTS** the plaintiff's motion for injunctive relief. Dkt. No. 9. The court will issue a separate injunction in compliance with Federal Rule of Civil Procedure 65(d).

The court **ORDERS** that this case is **DISMISSED.**

Dated in Milwaukee, Wisconsin this 30th day of November, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

15

Case 2:23-cv-00785-PP   Filed 11/30/23   Page 15 of 15   Document 11